The first case today is number 24-1575, Riverdale Mills Corporation v. Laurie Chavez-DeRemer. At this time, would counsel for the petitioner please introduce himself on the record at the podium to begin. Good morning, Your Honors. Travis Vance with Fisher & Phillips, and we represent Riverdale Mills Corporation in this matter. Your Honor, Judge Rickleman, I would kindly request two minutes of rebuttal of my allotted time. You may. Thanks, Your Honor. May it please the Court, this case involves an Equal Access to Justice Act request for fees and costs associated with a couple of OSHA inspections that were initiated in 2019. As part of the application that Riverdale submitted in that case, they are asking that their financial record be submitted under seal in order to protect confidential business information and trade secrets. It's important to understand the policy behind the Equal Access to Justice Act, and that is for certain individuals, partnerships, and corporations and other organizations that may be deterred from seeking review against unreasonable government action, being able to secure the vindication of their rights in civil action and administrative proceedings. Counsel, can I ask you to begin with, we have a threshold jurisdictional question here, and I was wondering if you could address that because I think it wasn't addressed in your opening brief. Sure, Your Honor. And of course it's in dispute, so do you think you've met your burden to show that we have jurisdiction given that you didn't address it in your opening brief? Yes, Your Honor. This case, this court has jurisdiction under the collateral order doctrine articulated in the United States Supreme Court case Cohen v. Beneficial Finance Industrial Court. Specifically, this appeal falls within that small class of decisions accepted from the final judgment ruled in Cohen because the ALJ's order conclusively determined that Riverdale's confidential comparative balance sheet should be made public. The question to seal the comparative balance sheet is an important one and separate from the merits of determining whether the EAJA fees are appropriate, and the order is effectively unrevealable on appeal from a final judgment because once Riverdale's confidential financial information is made publicly available, it cannot be made secret again. Counsel, what case thought would you point to as most helpful to your position on the important question? I understand very well your arguments that it's a discrete issue, it's been conclusively determined, it's separate from the merits, but what specifically do you think is your best case for showing that whether your client's particular balance sheet should be unsealed is an important question for consideration by this court? Well, there's several cases that we have cited, Your Honor, but the Apple versus Samsung case, the other Apple cases that were cited, in addition to the cases that show that this sort of document has been sealed in other cases, and our position is once the court unseals the document, then even if we prevailed on the EAJA claim or lost and there was an appeal, then effectively we would have waived that claim because the information is in the public realm at that point and there's no way to go back to do that. So we believe that without jurisdiction under Cohen, under the collateral order doctrine, Riverdale would be highly prejudiced because it would not be able to make confidential again a document now that has never been publicly available or provided to anyone other than top officials at Riverdale Mills. With respect to the EAJA statute, Your Honor, I think it's very important to realize that the EAJA statute itself does not actually require this detailed information with the application for a financial record. It does specifically say that the EAJA application shall be itemized with respect to the fees and costs being requested, but it does not have that same requirement with respect to the application to determine if Riverdale is actually a party as defined under the EAJA. That goes to the factors that the court should consider as to whether or not this is a document that's generally kept public or if it's a document that is not typically public. The EAJA statute specifically says they are more focused on the itemized expenses and costs being sought, but not an itemized application that shows the financial wherewithal of the claimant. In addition to that, with respect to the claim that this document has typically been held to be public or a judicial record that is required for adjudication of an EAJA claim, the EAJA statute specifically identifies the Administrative Conference of the United States, which does make publicly available certain information about EAJA awards. The statute provides that the EAJA database must have the case name and number of the adversary adjudication, the name of the agency involved in the adjudication, a description of the claims in the adversary adjudication, the name of each party to whom the award was made, the amount of the award, and the basis for the finding disposition of the agency. The other side's point is you put this document forward as the evidence, right, for the threshold question under EAJA, right? That's correct, Your Honor. So you made that choice, and their point is it's an important document to understanding what the judge, if the judge is going to award EAJA fees, which would be a quarter million dollars of public money, that document is important to understanding what the judge did. That's the essence of their argument. It was your choice how to prove it. That's how you chose to prove it. They say it's important and it should be in the public for that important reason. What is your response? Your Honor, our position on that specifically is that, one, it's not specifically required by the EAJA. It was submitted by Riverdale, Your Honor. Counsel, if I could follow up, you point only to the EAJA, but this agency was authorized by Congress to promulgate rules. It has promulgated those rules. Those rules require the filing of the affidavit that you would like to seal. I could understand the argument you're making if you had challenged the agency's ability to promulgate such rules, but you have not. So you're saying we should disregard the agency rules which require that the document be filed as part of a proceeding which has to be public. What is your response? Yes, Your Honor. In looking at the regulations that you speak of, Your Honor, there is a carve-out with respect to a financial record that can be filed under seal. A motion to seal can be filed. That's what was done here and consistent with the EAJA, which says specifically in Section G that even with the database that I mentioned, that database may not reveal any information, the disclosure of which is prohibited by law or a court order. So I think the intent there is that this particular information… Excuse me, Counsel. Sure. The law has put the sum on the scale differently. It requires you, if you are seeking EAJA fees from the public court, to file such an application. Yes, Your Honor. It does state that. So doesn't your argument in the end amount to it was an abuse of discretion by the ALJ? Yes, Your Honor. That is correct. Our position is that it was an abuse of discretion, and if you look at the statute, the actual language of the EAJA and the regulations, we believe that it weighs in favor of sealing the document because this particular document is one that contains private information and has not always been public information and is not required for the ALJ to make a decision on the EAJA claim. Counsel, if it wasn't required, why did you submit it? Returning to Judge Aframe's question, you had a choice about what information to provide. You chose to provide this. You're saying it's not required now, but this is what you provided, and the ALJ has to make a threshold determination about whether your client is even someone who's eligible to receive EAJA fees, which is a critical decision in the EAJA litigation itself, and the public won't know the basis for the ALJ's decision if they can't look at the document. So it may not have been required, but you did submit it, and so now we have to look at whether the ALJ abused her discretion in deciding whether to seal or unseal a document you provided to her. What exactly do you think she got wrong? I know you have two minutes for rebuttal, but what exactly would you point to that was the abuse of discretion here? This document is not required for the decision on the merits, Your Honor, and that's specifically whether the government's actions were substantially justified here. They had 11 out of 14 citations vacated after a case with 15 depositions. Riverdale should not be discouraged from pursuing this type of claim, but if you look at the other cases, Your Honor, from the commission or ALJs with respect to motions to seal for the Laffitt roofing case, there's a full discussion about the Laffitt claim that they qualify for the EAJA, but it's not attached. There's a footnote that there was a motion to seal. So in that case, that's evidence, Your Honor, that the ALJ can make a determination without the document being public. Then, of course, from a practical standpoint, there could be a consent order to protect it during the course of discovery so the government would not be prejudiced and would be able to cross-examine Riverdale's witnesses during discovery and the hearing. Okay. Thank you, Counsel. Thanks, Your Honor. Thank you, Counsel. At this time, would Counsel for the Respondent please introduce herself on the record to begin? Ann Bonfilio for the Respondent, Secretary of Labor. May it please the Court. Judicial records filed in court proceedings, including Autry proceedings, are presumed to be public, and sealing is warranted only on a showing of compelling circumstances. As the Supreme Court has advised, decisions on sealing are best left to the trial court's discretion as is the case here where the ALJ correctly applied the common law balancing test and properly found that Riverdale had not satisfied its burden in demonstrating compelling private interests that outweighed the public presumption of access. As a preliminary matter, assuming that this Court does have jurisdiction over Riverdale's appeal under the collateral order doctrine, the Court would still lack jurisdiction to consider the argument that Riverdale briefed that Section 15 supplanted the common law analysis because Riverdale did not raise that argument before the ALJ, as this Court's precedent has indicated it must. When Riverdale filed its motion to seal, the commission's rules required it state with particularity the grounds for its relief, and Riverdale relied on cases applying the common law test and argued that its private interests outweighed the public presumption. Counsel? Counsel, I'd like to go back to Judge Rickleman's important first question as to the existence of appellate jurisdiction under the Cohen doctrine. Apart from the fact that it wasn't in the original brief that your opponent filed, I'm curious about the issue of it has to be an important question. Your opponent seems to think that because his company thinks this data is important to them individually, that that makes this an important question for purposes of court of appeals jurisdiction. These cases will continue to recur. Normally, if something is an abuse of discretion standard of review, we wouldn't consider that to be an important question of law. Does the Secretary have any position on this? The Secretary's understanding is that under this Court's precedent, it is appropriate to consider motion to seal questions under the collateral order doctrine that was done in the Boston Herald case and the CETL decision. We do understand that there are attributes to needing to protect information that might raise an important question that merit consideration on appeal. However, to the question of abuse of discretion, there was no abuse of discretion here because in applying that common law test, the ALJ did both properly balance the public and private interests and acted correctly in finding that Riverdale had not met its burden. Can I just follow up on Judge Lynch's question before you continue with the merits? Yes. As Judge Lynch was saying, if this is an important question, is the government's view then, based on what you just answered about our case law, that categorically all rulings and motions to seal are important questions that we need to review under the collateral order doctrine, and therefore every motion to seal decision that's made in these types of proceedings could therefore come on appeal to us? In other words, does the government suggest any kind of guardrails, or is it literally any time that an ALJ makes a ruling on a motion to seal that can be appealed to us? My understanding, Your Honor, is that some circuit courts have applied a categorical rule on motions to seal, and this court has not done so. To Judge Lynch's point, to the extent that abuse of discretion decisions are generally not deemed important questions, we would defer to the court on sort of retaining the discretion to decline collateral order jurisdiction on that basis. It seems to me there's a difference between cases involving the media, like the Boston Herald case, and sort of routine disputes out of administrative agencies. And so it kind of seems more logical that courts of appeals would retain discretion and not adopt a categorical rule. And I take it that is the Secretary's position here? Yes, I would agree with that, Your Honor. And I do think that in cases where the media is a party, that sort of risk of the broad publication of the information is probably greater than it is here, although the OSHRC proceedings are open to the public and their records are available to the public if they would so seek them. So here, in applying the common law test, the ALJ correctly found that the presumption of public access was particularly strong for two reasons. So first, both the D.C. and First Circuit are consistent in recognizing that in cases where the government is a party, that need for public access is greater than usual. And second, the ALJ accurately noted that the net worth exhibit is germane to understanding Riverdale's EJIA eligibility, or as Judge Ruckelman put it, critical to understanding that first threshold question, and that underscores the need for access in this case. This question is one of three things that are proven in the EJIA litigation. The substantial justification is the last to be considered. This second point on the germaneness to the eligibility implicates the purpose behind the presumption of public access, which is to ensure integrity and confidence in judicial remedies and proceedings. And here, Riverdale is seeking a substantial award of public funds, and there are a number of public statements that Riverdale has made that do raise its eligibility for EJIA into question, and these include its claim to be the leading manufacturer of welded wire mesh globally, which it identifies as a billion-dollar industry. And I'll also note that in 2018, shortly before the financial document at issue here, their CEO was awarded the Worcester Business Journal's large business leader of the year award. Do you think those facts matter? In other words, would we need facts like that in the record to decide that a document like this was important to the EJIA litigation, and therefore needs to be disclosed under the normal balancing test? Not necessarily, because the public right of access is a presumption, and so the presumption is that these types of documents that are central to the litigation can just raise up that need for public access, and we believe that the public presentation of the company as a large company just sort of amplifies that even greater and tips the scales sort of ‑‑ it makes it a harder burden for Riverdale to overcome. And given sort of these public presentations, we believe that there needs to be a public accounting as to Riverdale's eligibility, and the motion to seal would prevent the ALJ from really analyzing the eligibility of the finances in her decision. The ALJ also fairly considered the private interests that Riverdale had alleged, and she rightly found that they were not sufficiently compelling to outweigh the public right of access. Her specific findings that the five‑year‑old document was stale, that there's less interest in an entity's finances than in individuals, and that there was no trade secret information. Why is that right, that there's less interest in an entity's ‑‑ I mean, if I'm the competitor of the entity, which I think is what the affidavit said, I would have all sorts of interests in the financial wherewithal of my competitor, and I don't want that out there because it puts me at a competitive disadvantage. Why is that not a fair thing to argue? So the ALJ's decision compared a company ‑‑ it was a company's interest to a private individual's interest, and she found that the company has less of an interest to private financials, which are almost universally considered personal information that's protected. To Riverdale's point that there's a competitive risk, Riverdale was required to make a specific factual showing that it was likely that there would be a competitive harm if the document was disclosed, and Riverdale failed to do so. There were two sort of general issues that I'll point out. So one, their CEO's affidavit didn't provide any explanation as to how the total liability and aggregate ‑‑ total asset and liability values might result in the detailed information that they claimed their competitors could understand. It's very different from the Apple Electronics case where the concern was the release of product‑specific pricing information. There's no such detailed information here. It's quite general. And then the company also offered only a conclusory and speculative claim that the release of the six‑year‑old document would harm the position without explaining ‑‑ putting any tie between that document and the harm alleged. And so if there are no further questions, I will respectfully request this court affirm the ALJ's denial of the motion to seal. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the petitioner please come back to the podium and reintroduce himself on the record? He has a two‑minute rebuttal. Your Honors, may it please the court, Travis Vance with Fisher and Phillips for Riverdale Meals Corporation. Just briefly, Your Honor, on the five‑year‑old document issue, the issue there is that the EAJA requires you to file an application that shows that you were eligible at the time of the adjudication. So it was the right thing to file. That's not the point. The point is it doesn't affect the competitive harms as much that you set forth in that affidavit. It was the right thing to file. That's a different question from what's your harm now. Well, Your Honor, with respect to the regulation that says that they can be filed under seal, it would make that particular regulation moot because under the EAJA all the applications would be aged at that point. With respect to the financial harm, things like inventory, cash on hand, equipment depreciation, things along those lines are extremely important. The problem I had with the affidavit was it would seem to apply to every company. There was nothing specific other than to say, yes, cash on hand, this is how it could harm us, but that would seem to apply to everyone. Yes, Your Honor. In this case, Riverdale Meals has competitors in Italy and China. About 45% of its materials are exported, imports. None of that's in the affidavit, right? It's not in the affidavit, Your Honor, but the Italy and Chinese competitors is in the record, Your Honor. And with respect to what they do as a business is in the record, and given today's circumstances with tariffs, the amount of inventory that a particular company has can be used in a predatory way against a company because if they didn't have a certain amount of inventory prior to tariffs, then prices could be raised after the tariffs were instituted. Your Honor, I know about, out of time, Judge Rickleman, Your Honors, Riverdale Meals respectfully requests for all the reasons stated today in its briefing, including the response to the motion to show cause, which briefed the collateral order doctrine, we respectfully request that this court overturn the ALJ's denial of our motion to seal. Thank you. Thank you, Your Honor. Thank you, counsel. That concludes argument in this case.